UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NILGUN CIMEN,

                            Plaintiff,                  **MEMORANDUM
AND OPINION**
      -against-                             CV 23-7706 (AYS)

STARBUCKS CORPORATION, d/b/a/
STARBUCKS COFFEE COMPANY,


                            Defendant.
------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

     Plaintiff, Nilgun Cimen ("Plaintiff"), commenced this personal injury action against

Defendant, Starbucks Corporation, doing business as Starbucks Coffee Company ("Starbucks" or

"Defendant") on March 10, 2023. Plaintiff seeks damages for injuries allegedly suffered after she

fell at a Starbucks store located in Islandia, New York (the "Store") on July 11, 2022 (the

"Incident"). This case was originally commenced in New York Supreme Court and was thereafter

removed to this Court based on the diversity of the parties' citizenship. (Docket Entry ("DE")

[1].) Presently before this Court is Defendant's motion for summary judgment. (DE [24].) For

the reasons set forth below, the motion is granted.

BACKGROUND

I.      <u>Basis of Facts Recited Herein</u>

     The facts set forth below are drawn from the parties' statements of material facts

submitted pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the

Southern and Eastern Districts of New York. (DE [24-2] (Defendant's Rule 56.1 Statement); DE

[25-1] (Plaintiff's Rule 56.1 Statement) (collectively the (the "Rule 56.1 Statements")). The facts

are undisputed unless otherwise noted. For ease of reference, and to avoid repetition where there

1

is no factual dispute, the Court cites only to Plaintiff's Rule 56.1 Statement and to her Counter Statement of Material Facts. The Court also considers and refers to documents submitted by the parties, which include transcripts of depositions and video footage taken at the Store on the date of the Incident.[1]

II.       The Incident as Described by the Parties and as Depicted in Video Evidence

Plaintiff was injured at the Store on July 11, 2022, when she slipped on what she describes as a "wet slippery substance." (DE [25-1] ¶ 1.) That morning, Plaintiff and her boyfriend stopped at the Store to get drinks and to use the restroom. (DE [25-1] ¶ 2.) Plaintiff entered the Store and went directly to the restroom, which was located in a small alcove at one end of the Store. (DE [25-1] ¶¶ 3-4.) To reach the restroom, Plaintiff had to walk straight into the Store until reaching the alcove, where two restrooms were located; the door to one was directly in front of Plaintiff, and the door to the second restroom was to her right. (DE [25-1] ¶¶ 4-5.) After entering the alcove area, Plaintiff turned to the right and attempted to open that restroom door, which was locked. (DE [25-1] ¶¶ 6-7.) She then attempted to enter the second restroom and fell.

Video evidence submitted along with Defendant's motion for summary judgment depicts Plaintiff entering the alcove area. It also depicts her falling. With respect to Plaintiff's fall, and the seven seconds immediately prior thereto, Defendant describes the video footage (appearing at time stamped 59:50-59:57 of the video footage submitted as Exhibit M to the Declaration of Joseph M. Hanna, Esq. (hereinafter the "Video")) as follows: "The video shows that, after Plaintiff tried to open the locked door, she turned back toward the main area of the store, took

---

[1] For ease of reference, page numbers for exhibits referenced herein are numbers assigned to pages on electronically filed documents, and not to the underlying documents themselves, with the exception of page numbers referenced in transcripts.

approximately two steps, and then fell to the floor." (DE [25-1] ¶ 8.) Plaintiff disputes this statement and characterizes the footage as follows: "Plaintiff took approximately two (2) steps and then slipped on a slippery floor surface, which caused her to fall to the ground." (DE [25-1] ¶ 8.)

As demonstrated by these statements, the parties agree that Plaintiff took approximately two steps in the alcove area and fell. There is also no question that Plaintiff walked through the Store, without slipping or falling, before entering the alcove area where the restrooms were located. There is no agreement, however, as to why Plaintiff fell, and as to the presence of any substance on the floor prior to her fall.

Plaintiff's version of the facts regarding the presence of a substance on the floor was explored during her deposition. She testified that she fell on a "slippery" floor and that "there was something almost oily, some sort of residue that felt oily and slippery." (DE [25-1] ¶¶ 9-10.) Plaintiff's testimony regarding something "slippery" was not based on anything that she could see on the floor, but on what she states she felt beneath her foot. (DE [25-1] ¶¶ 10-11.) She states that she neither observed nor felt anything oily beneath her feet upon entering the Store; she testified only that she felt something oily in the alcove area, after finding one of the bathroom doors to be locked, and just prior to her fall. (DE [25-1] ¶¶ 12-16.) Since Plaintiff did not see anything, she could not describe the shape of any substance, or its size. Nor does she state that the claimed substance had any odor, or how it came to be on the floor. (DE [25-1] ¶¶ 17-22; 31.) Plaintiff's testimony makes clear that Plaintiff's belief that she slipped on something "oily" is based only on a feeling beneath her shoe just prior to her fall.

Thus, Plaintiff testified as follows:

Q:    Did you see this residue?
A:    No, I didn't see it.

3

> Q: Okay. Did you see what you described as oily residue at any point before or after you fell?
>
> A: No.
>
> Q: When you say that there was something oily there, you're basing that off of what you felt underneath your foot and not something that you saw. Is that correct?
>
> A: That's correct, yes.
>
> Q: At any time before you fell did you see anything that appeared oily or any kind of liquid substance on the floor in Starbucks?
>
> A: No, I don't know that without seeing it.

(DE [25-1] ¶ 29.)

Plaintiff described the lighting in the area of the alcove (and her fall) as "very bright." (DE [25-1] ¶¶ 24; 28.) While Plaintiff assumes that the substance on the floor was liquid that was left on the floor during cleaning, she did not see any employee with a mop or a brush. There is no evidence (video or otherwise) to support this theory of leftover cleaning product, and Plaintiff does not disagree with Defendant's statement that prior to the fall, no one cleaned the area where Plaintiff fell. (DE [25-1] ¶¶ 25-26.) Indeed, the video footage confirms that no employee performed any cleaning in the area of the Incident within the hour prior thereto. (DE [25-1] ¶ 27.)

Defendant's shift supervisor, Carrie Valentino ("Valentino"), was deposed. She had worked at the Store since 2018. (DE [25-1] ¶ 34.) While Valentino was working at the time of the Incident, she did not see it happen. (DE [25-1] ¶ 35.) Valentino checked on Plaintiff after the Incident. Defendant states that Valentino saw nothing on the floor at the site of the Incident. (DE [25-1] ¶ 37.) Plaintiff disagrees with this statement. However, she does not contradict or cite to any testimony indicating that Valentino saw anything on the floor. Plaintiff's disagreement is based on the video depiction of Valentino wiping the floor at the site of Plaintiff's fall – after the

4

fall. (DE [25-1] at ¶ 37.) After the Incident, and while Plaintiff was still in the Store, Valentino initiated an incident report (the "Report") by calling in to Starbucks "Customer Care." (DE [25-1] ¶¶ 42-43.) The Report stated that there was not any substance on the floor. While Plaintiff disagrees with this statement she does not, again, argue that Valentino testified as to the presence of any substance on the floor prior to the Incident. Nor does Plaintiff argue that the Report stated there was such a substance. Instead, Plaintiff's disagreement is based only on post-Incident facts that after paramedics wheeled Plaintiff out of the Store, Valentino swept the area with a broom and then posted a "Wet Floor" sign near the area.

Valentino testified that the Store had no previous issues with water on the floor near the restrooms. (DE [25-1] at ¶ 45.) She testified that the restrooms were checked every hour as part of a cycle of tasks, and that spot checks of the area were conducted as well, particularly when employees used the restrooms. Plaintiff points out that there is no video evidence during the fifty-nine minutes prior to the Incident supporting adherence to any policy regarding such hourly checks. (DE [25-1] ¶¶ 46-48.)

Brittany Schneider ("Schneider"), the shift supervisor at the Store on the date of the Incident, was also deposed. (DE [25-1] ¶ 38.) While Schneider did not witness the Incident, she did go over to Plaintiff to check on her after her fall. (DE [25-1] ¶¶ 39-40.) At that time, Schneider saw nothing on the floor. (DE [25-1] ¶¶ 41-43.) Also deposed were Deborah Gregorio ("Gregorio"), the Store's manager at the time of the Incident, and for eight years prior thereto, Kellie Bailey ("Bailey"), a shift supervisor, and Arianno Canesco ("Canesco"). (DE [25-1] ¶¶ 51-58.) Bailey, who worked on the date of the Incident, did not receive any complaints about the floor near the restrooms on that date. (DE [25-1] ¶¶ 54, 56.) Plaintiff made no complaint with respect to any issue on the area of the floor when she fell, and Bailey knew of no one making any

such complaint. (DE [25-1] ¶¶ 61-62.) The employees also testified that they continuously visualize the restroom area throughout the day because it is close to the counter where customers place their orders. No employee deposed testified regarding any falls at the Store prior to the Incident. (DE [25-1] ¶¶ 48.) Again, Plaintiff disputes this testimony regarding the checking of the area of the fall, in that there is no video evidence supporting such checks. (DE [25-1] ¶¶ 48.) None of the deposed employees recalled any falls at the Store prior to the Incident. (DE [25-1] ¶¶ 49, 52, 59-60.)

As referred to above, there is video evidence capturing the Incident and the area where it took place. Three such videos were exchanged during discovery. The three exchanged videos show the same camera angle but are of different lengths. Defendants have submitted only the video referred to above as the "Video," which is attached as Exhibit M to the Declaration of Joseph M. Hanna, Esq. This video was shown to Plaintiff and to all witnesses. The Court finds no impropriety with respect to the citing of only one of the videos – the longest. Plaintiff was free to examine and to cite to all the videos. The Court rejects any insinuation in Plaintiff's Rule 56.1 Statement that there is a question of fact because Defendant has not gone through the exercise of citing to and submitting all three videos. (DE [25-1] ¶¶ 63 and n.1.)

There is no question that the video submitted reliably depicts the Incident and there is no question as to whether it was created in the normal course of Starbucks's business. Indeed, Plaintiff identified herself in the Video and confirms that it shows the Incident. (DE [25-1] ¶ 64.) The Video is clear and the view of the Incident is unobstructed. The entirety of the Video shows several individuals walking over the area of the Incident prior to Plaintiff's fall – some as many as six or seven times. (DE [25-1] ¶ 67.) Each traverse is described by Defendant as follows:

At approximately 09:43, Customer #1 walks over the area without incident.

6

At approximately 10:06, Customer #1 walks over the area for a second time without incident.

At approximately 10:18, Customer #1 walks over the area for a third time without incident.

At approximately 10:36, Employee #1 walks over the area without incident.

At approximately 10:51, Customer #1 walks over the area for a fourth time without incident.

At approximately 11:39, Employee #2 walks over the area without incident.

At approximately 11:43, Customer #1 walks over the area for a fifth time without incident.

At approximately 12:37, Customer #1 walks over the area for a sixth time without incident.

At approximately 12:40, Employee #2 walks over the area for a second time without incident.

At approximately 12:48, Employee #1 walks over the area for a second time without incident.

At approximately 14:14, Customer #2 walks over the area without incident.

At approximately 14:19, Customer #2 walks over the area for a second time without incident.

At approximately 14:28, Customer #2 walks over the area for a third time without incident.

At approximately 16:12, Customer #2 walks over the area for a fourth time without incident.

At approximately 18:31, Customer #3 walks over the area without incident.

At approximately 18:36, Customer #1 walks over the area for a seventh time without incident.

At approximately 19:26, Customer #3 walks over the area for a second time without incident.

At approximately 19:29, Employee #3 walks over the area without incident.

At approximately 21:59, Employee #3 walks over the area for a second time without incident.

At approximately 34:03, Employee #4 walks over the area without incident.

At approximately 35:24, Employee #4 walks over the area for a second time without incident.

At approximately 49:21, Customer #4 walks over the area without incident.

At approximately 49:27, Customer #4 walks over the area for a second time without incident.

At approximately 49:49, Customer #4 walks over the area for a third time without incident.

At approximately 52:31, Customer #4 walks over the area for a fourth time without incident.

At approximately 52:35, Employee #5 walks over the area without incident.

At approximately 53:54, Employee #5 walks over the area for a second time without incident.

At approximately 54:36, Customer #5 walks over the area without incident.

At approximately 54:56, Customer #5 walks over the area for a second time without incident.

At approximately 57:11, Customer #6 walks over the area without incident.

At approximately 58:52, Customer #6 walks over the area for a second time without incident.

At approximately 59:37, Employee #6 walks over the area without incident.

At approximately 59:54, Plaintiff walks over the area without incident.

At approximately 59:57, Plaintiff falls.

(DE [25-1] ¶ 67.)

Plaintiff does not dispute the veracity of the images in the Video. Still, she does not concede Defendant's statement that the depicted events occurred. Instead, Plaintiff "denies and

8

disputes" the video evidence on the ground that the "identity of each individual shown in the video walking over the area and their respective responsibility to inspect or check the area has never been established or exchanged by the Defendant during the course of discovery. As such, the Plaintiff contends that this is an issue of fact that needs to be tried." (DE [25-1] ¶ 67.) Plaintiff's quarrel with the description of the clear video evidence is not with what is clearly depicted, i.e., several individuals going back and forth over the area of the Plaintiff's fall without incident, but with the depiction of those persons as "employees" or customers" and assigning them numbers. However, and importantly, there is no question that the Video shows that in the hour before the Incident, no individual who walked in the alcove slipped or fell. (DE [25-1] ¶¶ 68-69.) Nor, during that time period, did any individual bend over or look more closely at the floor in the area of Plaintiff's fall. During that same period of time, no employee or customer wiped the floor in the area of Plaintiff's fall. (DE [25-1] ¶¶ 70-71.) Additionally, during that same time period, no employee or customer appeared to spill anything in the area of Plaintiff's fall. (DE [25-1] ¶ 72.)

Plaintiff's Statement of Additional Facts (cited herein as "Plaintiff's 56.1(b)"), which she contends sets forth triable issues of fact, focuses on the fact that the Video reveals that the alcove where the Incident took place was neither inspected nor spot-checked until after the Incident. (Plaintiff's 56.1(b) ¶ 1.) Plaintiff also focuses on the fact, referred to above, that the Video shows that the first time the area was cleaned was when Valentino returned to clean the area with a broom and dustpan after the Incident. (Plaintiff's 56.1(b) ¶ 2.) Additionally, Plaintiff notes that after cleaning the area, Valentino returned and put out a "Wet Floor" sign. (Plaintiff's 56.1(b) ¶ 3.) It is also noted that Valentino thereafter returned to the area and twice dried the floor with a towel. (Plaintiff's 56.1(b) ¶¶ 4-5.) This evidence makes clear that the only cleaning of the area of

the Incident – both cleaning and drying – took place after Plaintiff's fall. (Plaintiff's 56.1(b) ¶¶ 6-7, 9.) Likewise, the Video further makes clear that the only time that a "wet floor" sign was placed in the area was after the Incident. (Plaintiff's 56.1(b) ¶ 8.) Plaintiff concludes, based upon this evidence, that "if any inspection of the area where the Plaintiff had fallen had been done prior to the Plaintiff falling down, the wet slippery condition, which had caused her to fall, would have been identified and cleaned." (Plaintiff's 56.1(b) ¶ 10.)

DISCUSSION

I.    Legal Principles

    A.    Summary Judgment

Summary judgment is appropriately granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009). A fact is "material" if it might affect the outcome of the litigation under the relevant law. Id. The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. See Celotex, 477 U.S. at 322. Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 322).

10

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all reasonable inferences against the moving party." Tolbert v. Smith, 790 F.3d 427, 434 (2d Cir. 2015); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise, see Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995), and must do more than show that there is "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Instead, the non-moving party must "set forth significant, probative evidence on which a reasonable fact-finder could decide" in their favor. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256-57 (1986).

Where, as here, a case is proceeding pursuant to this Court's diversity jurisdiction, substantive state law applies to the plaintiff's claims. See Crawford v. Walmart Inc., No. 23-CV-3960, 2025 WL 2467043, at *3 (E.D.N.Y. Aug. 27, 2025). However, the parties' evidentiary burdens on summary judgment are governed by Federal Law. See id.; see also Shimunov v. Home Depot U.S.A., Inc., No. 11-CV-5136, 2014 WL 1311561, at *3 (E.D.N.Y. Mar. 28, 2014). Applying that Federal law, defendant satisfies its burden on summary judgment by showing "that Plaintiff lacks evidence as to a necessary element of her claim on which she would bear the burden of proof at trial." Grossman v. Lowe's Store No. 1597, No. 23-CV-8014, 2026 WL 865989, at *7 (E.D.N.Y. March 30, 2026). Once that burden is discharged, a plaintiff avoids summary judgment only by coming forward with evidence showing the presence of a genuine issue of material fact as to any such element as to the challenged elements of her claim. See Crawford, 2025 WL 2467043, at *3.

11

B.     Negligence

To establish a prima facie case of negligence Under New York law a plaintiff must show: (1) a duty owed to plaintiff; (2) breach of that duty, and (3) injury proximately caused by that breach. See Lerner v. Fleet Bank, 459 F.3d 273, 286 (2d Cir. 2006); Carlozzi v. Target Corp., No. CV 15-296, 2016 WL 8711207, at *5 (E.D.N.Y. Apr. 29, 2016).  As to duty, there is no question that Starbucks, as the owner of the premises where the Incident occurred, owed Plaintiff the duty to "maintain a reasonably safe environment, in view of all of [the] circumstances, including 'likelihood of injury to third parties, the potential seriousness of the injury and the burden of avoiding the risk.'" Id. (citation omitted). To show breach of that duty, a plaintiff must establish: (1) that the owner created the defective condition that caused plaintiff's injury; or (2) that the owner had actual notice of the condition; or (3) that the owner had constructive notice of the condition." Janetos v. Home Depot U.S.A., Inc., No. CV 09-1025, 2012 WL 4049839, at *9 (E.D.N.Y. Sep. 13, 2012).

To establish that a defendant created a dangerous condition, a plaintiff must point to some "affirmative 'deliberate and intentional' act by defendant' creating the alleged condition. Wilson v. Wal-Mart Stores, East., LP, No. 16 Civ. 8637, 2018 WL 4473342, at *5 (S.D.N.Y.  Sept. 18, 2018) (quoting Nussbaum v. Metro-N. Commuter R.R., 994 F. Supp. 2d 483, 493 (S.D.N.Y. 2014), aff'd, 603 Fed. App'x 10 (2d Cir. 2015)); see also Bennett v. Home Depot USA, Inc., No. 23-CV-8622, 2026 WL 63313, at *3 (E.D.N.Y. Jan. 8, 2026); Henry v. Target Corp., No. 16-CV-8416, 2018 WL 3559084, at *3 (S.D.N.Y. July 24, 2018). To establish actual notice of any condition, a plaintiff must come forward with evidence that the defendant was, in fact, aware of the dangerous condition that forms the basis of the complaint of negligence. See Castellanos v. Target Dep't Stores, Inc., No. 12 Civ. 2775, 2013 WL 4017166, at *4 (S.D.N.Y. Aug. 7, 2013).

Such notice may be established by showing that the defendant received reports of that condition prior to the plaintiff's encounter therewith. See Wilson, 2018 WL 4473342, at *7; see also Nussbaum, 603 Fed. Appx. at 12 ("Actual notice requires that a defendant receive complaints or similarly be alerted to the existence of the dangerous condition.").

Finally, a claim based on constructive notice of any condition requires a plaintiff to come forward with evidence that the condition was "visible and apparent" and that it existed for a "sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it." Nussbaum, 603 Fed. Appx. at 12 (quoting Lemonada v. Sutton, 702 N.Y.S.2d 275, 276 (1st Dept. 2000)) (alteration in original). While a plaintiff can establish constructive notice through circumstantial evidence, they must offer more than "mere speculation" that the defendant "should have been aware of a visibly hazardous condition." Shimunov, 2014 WL 1311561, at *5; see also Crawford, 2025 WL 2467043, at *4-7.

II.    The Motion

Plaintiff's case is based on the allegation that she slipped on a slippery or oily substance that was on the floor in the alcove area outside of the restrooms prior to her fall. Plaintiff theorizes that what she felt consisted of some unidentified leftover cleaning product.

Defendant argues that summary judgment must be granted because Plaintiff comes forward with no evidence upon which a jury could rely to support any finding that Starbucks created or had any notice – actual or constructive – of any substance on the floor prior to Plaintiff's fall. In support of its motion, Defendant relies on deposition testimony, including that of Plaintiff and several Starbucks employees, as described above. Defendant also relies on the Video, which shows the area of the Incident for a substantial period of time prior to Plaintiff's fall.

Plaintiff seeks to avoid summary judgment by relying on her own impression of an oily substance beneath her shoe and arguing that Starbucks failed to adhere to its hourly cleaning policy. She argues that the failure to clean the area in the alcove before her fall supports her claim of the presence of a slippery substance. Plaintiff also relies on activities that took place in the area of her fall after the Incident as circumstantial evidence that there was a substance on the floor prior thereto. Plaintiff argues that the post-Incident cleaning, drying and flagging of the area as wet raise genuine questions of fact as to the presence of a substance on the floor when she fell, and that Starbucks had notice thereof.

With the parties' arguments and the legal standards summarized above in mind, the Court turns to the merits of the motion.

III.    Disposition of the Motion

A.    Defendant Has Met Its Summary Judgment Burden

There is no question that Defendant has met its initial burden on summary judgment. Thus, pursuant to the Federal procedural law that applies, Starbucks has properly alleged what is required – that there is an absence of evidence to support an essential element of Plaintiff's claim, i.e., breach of duty. See Lyman v. PetSmart, Inc., No. 16 Civ. 4627, 2018 WL 4538908, at *6 (S.D.N.Y. Sep. 21, 2018); Strass v. Costco Wholesale Corp., No. 14-CV-6924, 2016 WL 3448578, at *4 (E.D.N.Y. June 17, 2016). The Court must therefore consider whether Plaintiff has discharged her burden of showing a question of fact as to that element.

B.    Starbucks Had No Actual Notice of Any Dangerous Condition

As discussed above, Plaintiff can show a question of triable fact as to breach of duty by showing that Starbucks created, or had actual or constructive notice of, a dangerous condition. Plaintiff's opposition to the motion makes clear that she does not argue that Starbucks

14

created or had actual notice of any dangerous condition. Instead, Plaintiff argues only that Starbucks had constructive notice of some condition. (Pl. Mem. of Law in Opp'n to Def. Mot. for Summ. J. ("Pl. Mem."), DE [25].) Thus, Plaintiff argues that Starbucks owed Plaintiff a duty of care, that it breached that duty on a theory of constructive notice, and that Plaintiff's injury was caused by that breach of duty. (Pl. Mem. at 12-14 (arguing repeatedly that Starbucks had constructive notice of a dangerous condition).)

The Court agrees that Defendant owed a duty of care to Plaintiff. Defendant does not argue otherwise. As to breach, Plaintiff's abandonment of any argument that Starbucks either created or had actual notice of a dangerous condition is not surprising since there is no evidence to support either theory. Thus, there is no evidence that Starbucks engaged in any intentional or affirmative act to create any condition on the floor where Plaintiff fell. See Wilson, 2018 WL 44763342, at *5. No witness testified as to any such act. Plaintiff "cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard." Vasquez v. United States, No. 14-CV-1510, 2016 WL 315879, at *7 (S.D.N.Y. Jan. 15, 2016); see also Cousin v. White Castle Sys., Inc., No. 06-CV-6335, 2009 WL 1955555, at *6 (E.D.N.Y. July 6, 2009) (noting that "plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard").

Nor is there evidence of any actual notice of any substance. Actual notice of a condition may be established by showing that Starbucks received reports of a condition on the floor prior to the Incident, see Nussbaum, 603 F. App'x at 12; Decker v. Middletown Walmart Supercenter Store #1959, No. 15 Civ. 2886, 2017 WL 568761, at *6 (S.D.N.Y. Feb. 10, 2017); Cousin, 2009 WL 195555, at *7. The evidence here shows quite the opposite. Thus, neither the Report, nor any

15

employee or customer, complained about the condition of the floor in the alcove outside of the restrooms. Under these circumstances, Plaintiff fails to show a triable question of fact as to whether Starbucks had actual notice of any condition that caused Plaintiff's fall. Accord Henry, 2018 WL 3559084, at *4 (finding no triable issue regarding actual notice where plaintiff failed "either (1) to identify a[n] employee who had knowledge of the [dangerous] condition before her [accident], or (2) to offer circumstantial evidence that would allow a reasonable jury to infer that an employee had actual notice."); Strass, 2016 WL 3448578, at *4 ("Aside from conclusory references to 'actual notice,' Plaintiffs do not identify any evidence that would support a finding that [Defendant] was, in fact, aware of the condition that allegedly caused [Plaintiff's accident] . . . ."); Decker, 2017 WL 568761, at *6 (granting defendant's motion for summary judgment where there was no evidence that "Defendant's employees had observed the substance on the ground prior to Plaintiff's fall" or that "Defendant had received reports of the condition").

C.      Starbucks Had No Constructive Notice of Any Dangerous Condition

Most importantly, the court rejects the lone argument relied on by Plaintiff – that there is evidence establishing a question of fact as to of Starbucks's constructive knowledge of some condition on the floor outside the restrooms prior to the Incident. To avoid summary judgment on this front, Plaintiff is required, as noted, to come forward with evidence that the condition was "visible and apparent" and that it existed for a "sufficient length of time" prior to the Incident to allow Starbucks to remedy it. Grossman, 2026 WL 865989, at * 11; see also Strass, 2016 WL 3448578, at *4. While a plaintiff may rely on circumstantial evidence, such evidence must support more than mere speculation. See Shimunov, 2014 WL 1311561, at *5. Moreover, to survive summary judgment, Plaintiff must come forward with more than a plausible theory, she must present evidence allowing a jury to make a reasonable inference that

16

Defendant had constructive notice of a particular condition. See Crawford, 2025 WL 2467043, at *4-7. Here, in contrast to any such evidence, all of the evidence before the Court is to the contrary.

Plaintiff's constructive notice argument appears to be grounded on a claimed failure to clean and inspect the area of Plaintiff's fall. She points to testimony regarding hourly cleaning and spot checks of the area, arguing that Starbucks fails to show that it adhered to any such cleaning policies. Plaintiff also relies on post-Incident activity to support her claim of negligence. Neither theory creates the requisite issue of fact. First, the argument that there was a failure to adhere to Starbucks's stated cleaning schedule does not satisfy Plaintiff's burden. Since the Federal burden of proof applies to this motion, Starbucks is "not required to produce evidence of the last time the area was inspected or cleaned but need only point to Plaintiff's lack of evidence and inability to raise a genuine issue of material fact. . . ." Bennett, 2025 WL 63313, at *5; see also Maitland v. Target Corp., No. 20-CV-3892, 2023 WL 6282918, at *7 (E.D.N.Y. Sep. 26, 2023), aff'd, No. 23-7520, 2024 WL 5182674 (2d Cir. Dec. 20, 2024).

Further, whether or not such a cleaning policy exists (or was adhered to in this case), is a red herring. This is because there is no evidence supporting the theory that failure to clean and inspect the area mattered here. Thus, even if it was shown that Starbucks failed to inspect the area of Plaintiff's fall, this does not relieve Plaintiff of the requirement to "come forward with evidence showing that a reasonable inspection would have revealed the condition." Wilson, 2018 WL 4473342, at *8. This is a case where the video evidence tells the clear story of the condition of the area of Plaintiff's fall prior to the Incident. It completely contradicts any argument that some condition existed long enough to support a claim of constructive notice. None of the several individuals traversing the small area outside of the restrooms slipped, fell, or made any

17

complaint with regard to the condition of the floor. Nor does the video evidence show any person looking downward to inspect any such condition. Where, as here, the video evidence is clear, it is entirely appropriate that such evidence be considered when deciding a motion for summary judgment. Plaintiff appears to argue that any case with video evidence must be submitted to the jury. This might be true where video evidence is unclear or contradicts other evidence. Such a case might present a question of fact suitable for a jury to consider. Here, the video evidence is neither unclear nor ambiguous. It supports the testimonial evidence and shows that there is no evidence that any failure to adhere to some set cleaning schedule resulted in any dangerous condition.

To the extent that Plaintiff seeks to show circumstantial evidence of constructive notice based upon the cleaning of the area of the Incident after her fall, any such argument is rejected. The case law is clear. Post-accident activity cannot create a question of fact as to constructive notice of a dangerous condition prior to an accident. See Crawford, 2025 WL 2467043, * 5 (noting that courts in this Circuit "routinely grant summary judgment" where the only evidence relied on is post-accident evidence).

In sum, Plaintiff creates no issue of fact as to the essential element of breach of duty to allow her claim of negligence to go to a jury. Ultimately, Plaintiff relies only on the fact that she fell, and a speculative theory regarding how it happened. Because there is simply no evidence supporting any such theory, Defendant's motion must be granted. See Grossman, 2026 WL 865989, *12 (failure to come forward with evidence corroborating plaintiff's theory of negligence requires entry of summary judgment for defendant).

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's for summary judgment is granted in its entirety.

The Clerk of the Court is directed to enter judgment accordingly and to close this case.


Dated:  Central Islip, New York
        May 13, 2026

                                         /s/ Anne Y. Shields
                                        Anne Y. Shields
                                        United States Magistrate Judge

19